**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

Tanya L. Campbell,                                      Case No. 0:17-CV-00944-DSD-DTS

                  Plaintiff,

vs.

St. Jude Medical, S.C.

                  Defendant.

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANT'S COUNTERCLAIM OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO DEFENDANT'S COUNTERCLAIM

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………………….i

TABLE OF AUTHORITIES……………………………………………………………….....iii

I-     INTRODUCTION……………………………………….………………...……1

II-    RELEVANT FACTS…………………………….…………………………..2

    A. Procedural History…………………………….……..…………………..……..2

    B. Defendant's Initial Disclosures, Supplemental Disclosures and Discovery Responses Fail to Show Damages………….……………3

    C. Undisputed Facts and Testimony Regarding Plaintiff's Recording of the March 5, 2015 Conference Call………….………..5

III-   STANDARD OF REVIEW…………………………..……………………6

IV-   ARGUMENT………………………………………..……………………….7

    A. The Court should dismiss the counterclaim under the Illinois eavesdropping statute because application of Illinois law would violate due process and controlling conflict of laws rules………......................................................................7

        1. Illinois law cannot be constitutionally applied because the choice of Illinois law would be arbitrary and fundamentally unfair………………………8

        2. Controlling Conflict of Laws Principles…………………..9

        3. The substantive laws of Illinois and Minnesota are in direct conflict with regard to Plaintiff's alleged tort liability for "eavesdropping"…………………9

            a. Illinois law………………….…..……………………....9

            b. Minnesota law………………….…..…………………..10

4.  DECISIONS IN SIMILAR EAVESDROPPING CASES
    DEMONSTRATE THAT THE FORUM STATE, MINNESOTA,
    SHOULD NOT APPLY ILLINOIS LAW TO PERMIT
    DEFENDANT'S COUNTERCLAIM WHERE THE LAW
    OF THE FORUM CONFLICTS WITH THE NON-FORUM
    LAW ON WHICH THE CLAIM IS BASED……………………………...11

5.  APPLICATION OF MILKOVICH FACTORS FOR CHOICE
    OF LAW ANALYSIS……………………………………………...……11

B.  IN THE ALTERNATIVE, THE COURT SHOULD DISMISS
    DEFENDANT'S COUNTERCLAIM BECAUSE THERE IS NO
    SET OF FACTS UNDER WHICH DEFENDANT CAN SUSTAIN
    ITS BURDEN OF PROVING ACTUAL DAMAGES, AND DEFENDANT
    CANNOT RECOVER PUNITIVE DAMAGES WITHOUT PROOF
    OF ACTUAL DAMAGES………………………………………………….……..14

C.  ST. JUDE CANNOT RECOVER ACTUAL DAMAGES FOR THE
    ADDITIONAL REASON THAT ITS PLEADINGS DO NOT SUPPORT
    A CLAIM FOR ACTUAL DAMAGES, AND IT HAS REFUSED TO
    PROVIDE ANY EVIDENCE OF DAMAGES IN DISCOVERY………………………...16

D.  DEFENDANT IS NOT ENTITLED TO PUNITIVE DAMAGES AS
    A MATTER OF LAW…………………………….………………………………20

E.  IN THE ALTERNATIVE, EVEN IF ILLINOIS LAW APPLIES,
    THE COURT SHOULD DISMISS DEFENDANT'S COUNTERCLAIM
    BECAUSE THE UNDISPUTED FACTS SHOW PLAINTIFF DID NOT
    ENGAGE IN PROHIBITED "EAVESDROPPING" IN VIOLATION
    OF THE ILLINOIS STATUTE……………………………………...........................21

V-  CONCLUSION………………………………...…………………………...24

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Allstate Insurance Co. v. Hague*,
  449 U.S. 302 (1981)……………………………………………………………………8, 9

*Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*,
  2009 WL 1617773 (E.D.N.Y. June 9, 2009)……………………...…………………………18

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)…………………………………………..…………………………..7

*Arthur v. Atkinson Freight Lines Corp.*,
  164 F.R.D. 19 (S.D.N.Y. 1995)……………………………………………………………18

*Brodak v. McClain*,
  Case No. 06-146 (W.D. Pa. Dec. 1, 2006)………………………………………………11

*By-Prod Corp. v. Armen-Berry Co.*,
  668 F.2d 956 (7th Cir. 1982)………………………………….………………………15, 19-21

*Faibisch v. Univ. of Minn.*,
  304 F.3d 797 (8th Cir.2002)……………………………………...………………………6

*Florsheim v. Travelers Indemnity Co. of Illinois*,
  75 Ill.App.3d 298, 393 N.E.2d 1223 (1979)……………………...……………………..19

*Fredin v. Sharp*,
  176 F.R.D. 304 (D. Minn. 1997)……………………………...…………………………9

*Jepson v. General Cas. Co. of Wisconsin*,
  513 N.W.2d 467 (Minn. 1984)…………………………………………..8, 12

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941)………………………………………………………………...9

*Larrison v. Larrison*,
  750 A.2d 895 (Pa. Super. 2000)…………………………………...………………………11

*Matson Logistics, LLC v. Smiens*,
  2012 U.S. Dist. LEXIS U.S. 77454 (D. Minn. June 5, 2012)……………………………9, 12-14

*McKinney v. Connecticut*,
  2011 WL 166199 (D. Conn. Jan. 19, 2011)………………………..……………………18

iii

*Medtronic, Inc. v. Advanced Bionics Corp.*,
  630 N.W.2d 438 (Minn. Ct. App. 2001)……………………………………………………..12-14

*Milkovich v. Saari*,
  295 Minn. 155, 203 N.W.2d 408 (Minn. 1973)…………………….……………………11-14

*Net 2 Press, Inc. v. 58 Dix Ave. Corp.*,
  266 F. Supp. 2d 146 (D. Me. 2003)…………………………….…………………………18-20

*Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*,
  604 N.W.2d 91 (Minn. 2000)……………………………………………………………12, 14

*People v. Clark*,
  2014 IL 115776 (2014)……………………………………….……..…………………9

*Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*,
  476 F.3d 594 (8th Cir. 2007)……………………………………...…………………….....9

*Syverson v. FirePond, Inc.*,
  383 F.3d 745 (8th Cir.2004)………………………….....………………………………6

*Transclean Corp. v. Bridgewood Services, Inc.*,
  77 F. Supp.2d 1045 (D. Minn. 1999)……………………...……………………………19

**Statutes**

720 ILCS 5/4-3 et seq……………………………………………………..22, 23

720 ILCS 5/14-1 et seq……………………………………………2, 9, 10, 14, 22, 23

Minn.Stat. § 626A.02, subd. 2(d)…………………………………………10, 13

**Other Authorities**

Fed. R. Civ. P. 12(c)…………………….…………………..…………………1, 6, 7

Fed. R. Civ. P. 26……………………………………………………………3

Fed. R. Civ. P. 26(e)(1)(A)………………………………………………....17

Fed. R. Civ. P. 37……………………………………………...............20

Fed. R. Civ. P. 56……………………………………………..……………6, 7

Fed. R. Civ. P. 56(a)…………………………………………..……………......7

Carol M. Bast, <u>Conflict of Law and Surreptitious Taping of Telephone Conversations</u>, 54 N.Y.L. Sch. L. Rev. 147, 150 (2009/2010)…………….......................................10, 11, 13, 14

Ed Finkell, "The Two Faces of Eavesdropping," <u>Illinois Bar Journal</u>, Vol. 103, June 2015……………………………………………………………..…………10

# I - INTRODUCTION

This is an employment discrimination and retaliation case arising out of the termination of Plaintiff's employment by Defendant. Defendant St. Jude Medical, a Minnesota corporation, filed a counterclaim against Plaintiff, a Michigan resident, for allegedly violating an Illinois eavesdropping statute. Defendant alleges Plaintiff violated Illinois law by recording a phone conversation with an employee of Defendant's human resources department, who was in Texas for the call, and her supervisor, who Defendant claims was in Illinois at the time of the call. The Court should dismiss Defendant's counterclaim based on the pleadings or, in the alternative, enter summary judgment on it for the following reasons.

First, pursuant to Fed. R. Civ. P. 12(c), the Court should enter a judgment of dismissal on the pleadings because the counterclaim is barred based on a conflict of laws. The law of the forum state, Minnesota, does not prohibit the alleged illegal conduct, which occurred in Michigan. It is undisputed that Plaintiff's conduct did not violate Michigan or Minnesota law because she was a party to the conversation on which the counterclaim is based. Minnesota and Michigan are "one party" consent states, while Illinois is an "all party" consent state. The substantive law of Illinois is thus in direct conflict with Minnesota law on the issue of what constitutes "eavesdropping." This Court is precluded from applying the Illinois eavesdropping statute as a matter of Minnesota's conflict of laws principles. The conflict of laws inquiry is outcome determinative because Plaintiff cannot be liable for "eavesdropping" as a matter of Minnesota law.

Second, even assuming Illinois law applies to the counterclaim, the Court should dismiss Defendant's counterclaim because there is no set of facts under which Defendant can sustain its burden of proving actual damages, an essential element of the counterclaim. Indeed, Defendant has not made any effort to prosecute or sustain its burden of proof on the counterclaim, nor has

Defendant provided required discovery to sustain its claim for damages.

Third, even assuming Illinois law applies to allow the counterclaim, the Court should dismiss Defendant's counterclaim because this case does not involve the type of malicious or aggravated conduct required to obtain punitive damages under Illinois law.

Fourth, in the alternative, the Court should dismiss Defendant's counterclaim because the undisputed facts show Plaintiff did not "knowingly and intentionally" commit the elements of the claim, and Defendant has not identified anyone through disclosures or other discovery that had discoverable information in support of the counterclaim, including anyone to testify that Collier was in Illinois at the time of the call.

## II - RELEVANT FACTS

### A.    PROCEDURAL HISTORY

Plaintiff filed her complaint in the United States District Court for the Eastern District of Michigan, in Detroit, on July 21, 2016.   (Docket No. 1, Complaint).  In lieu of filing an answer, on August 29, 2016, Defendant filed a motion to transfer venue, asserting the forum selection clause in Plaintiff's employment agreement should be interpreted broadly to require litigation only in Minnesota.  (Docket No. 3, Motion to Transfer Venue).  The district court in Detroit granted Defendant's motion to transfer. (Docket No. 12).

Defendant filed a motion to amend its answer to include a counterclaim against Plaintiff for allegedly violating an Illinois eavesdropping statute. 720 ILCS 5/14-1 et seq.  (Docket No. 43). Plaintiff opposed the amendment. (Docket Nos. 49 and 50).   In part, Plaintiff argued the counterclaim would be futile because the substantive laws of Illinois and Minnesota are in direct conflict regarding Plaintiff's liability for "eavesdropping, and the Court is precluded from applying Illinois law as a matter of Minnesota's conflict of laws principles."  (Docket No. 50).

On November 1, 2017, the Court granted Defendant's motion to amend its answer to

include a counterclaim against Plaintiff under the Illinois eavesdropping statute. (Docket No. 54). The Court reserved ruling with respect to the conflict of laws issue, holding "that at this juncture with the freely granting of motions to amend, that the choice of law analysis, if it applies, is for a later date." (Docket No. 59, p. 30-31). As to the merits of the counterclaim, the Court acknowledged "that [while] Ms. Campbell has a number of defenses to the statute, some of which may well carry the day, they do not render the amendment futile at this juncture under the relaxed standard for amendments under Rule 15." *Id*. at 31.

Defendant filed its amended answer and counterclaim on November 2, 2017. (Docket No. 55). In its counterclaim, Defendant alleges Plaintiff violated the Illinois statute on March 5, 2015 when she recorded a phone conversation involving Plaintiff, a St. Jude human resources employee, and her supervisor, who was allegedly in Illinois during the call. *Id*.

**B. DEFENDANT'S INITIAL DISCLOSURES, SUPPLEMENTAL DISCLOSURES AND DISCOVERY RESPONSES FAIL TO SHOW DAMAGES**

On June 30, 2017, prior to filing its counterclaim, Defendant served its initial disclosures pursuant to Fed. R. Civ. P. 26. (Ex. 1, Initial Disclosures). These disclosures are silent in all respects regarding the bases for the counterclaim as well as any damages stemming from the counterclaim. *Id*.

On October 11, 2017, Defendant filed supplemental initial disclosures. (Ex. 2, Supplemental Initial Disclosures). In these supplemental disclosures, Defendant remained silent with respect to the bases for its counterclaim, as well as its alleged damages under the counterclaim. *Id*.

On December 11, 2017, Plaintiff served her first interrogatories to Defendant with respect to its counterclaim. (Ex. 3, First Interrogatories as to Counterclaim). Plaintiff served Defendant with the following interrogatory regarding its damages:

**INTERROGATORY NO. 2:** With regard to your claim for actual damages as set forth in paragraph 14 of the counterclaim, please provide all complete description of each category of damages alleged, the factual basis for each category of damages alleged, the specific amount of damages claimed and basis for same, and produce all documents in support of your claim for damages.

Ex. 3, First Interrogatories as to Counterclaim

On January 10, 2018, in response to this interrogatory concerning damages, Defendant

Answered:

> …SJM states that it has not yet determined the extent of damages it might have suffered as a result of Campbell's unlawful behavior. Nonetheless, SJM suspects it may have suffered harm to its reputation, as well as potentially lost customers. Discovery is ongoing and SJ will timely supplement its Answer upon learning additional information. Nonetheless, SJM states that it is also entitled to an injunction prohibiting Campbell from surreptitiously recording future conversations, as well as to punitive damages.

Ex. 4, St. Jude's Answers to Counter-Defendant's First Set of Interrogatories, p. 4-5.

On March 27, 2018, Defendant served supplemental answers to Plaintiff's First Set of Interrogatories. (Ex. 5, St. Jude's Supplemental Answers to Interrogatories). In these supplemental answers, St. Jude copied and pasted its identical answer to the damages interrogatory, and did not provide further answer or proofs to establish actual damages under the counterclaim. *Id.*

Discovery closed on April 30, 2018. (Docket No. 63). Defendant never supplemented its answer with additional details or information regarding its claim for damages.

On April 18, 2018, Defendant served a supplemental document production in response to Plaintiff's request for production. (Ex. 6, Defendant's supplemental document production, Bates 1081-1088). This production consisted only of phone records for Plaintiff's supervisor, John Collier. *Id.* at Bates No. 1084. The records have not been authenticated, and Defendant has not disclosed any evidence or witnesses to prove Collier was in Illinois at the time of the call.

**C.    UNDISPUTED FACTS AND TESTIMONY REGARDING PLAINTIFF'S RECORDING OF THE MARCH 5, 2015 CONFERENCE CALL**

In its counterclaim, Defendant alleges Plaintiff violated the Illinois statute when she recorded a phone conversation involving Plaintiff, a St. Jude human resources employee, and her supervisor, who was allegedly in Illinois during the call.  The facts of the phone conversation are described in turn.

On March 5, 2015, Campbell received an e-mail from Robyn Dahl, a St. Jude human resources generalist, regarding the scheduling of a conference call between Campbell and Ms. Dahl.  Ex. 7, Campbell Declaration, ¶ 6; Ex. 8, e-mail from Dahl. John Collier is not mentioned in this e-mail. *Id*.

Campbell placed the call to the call-in number provided by Dahl. Ex. 7, Campbell Declaration, ¶ 7. She called the call-in number from Michigan and stayed at that location for the entire duration of the conversation. *Id*. at ¶ 8.

Campbell understood Dahl was in Texas during the call, but she has no way of verifying Dahl's location.  *Id*. at ¶ 9.  At the time of the call, Campbell knew Collier covered multiple states, and travelled, as part of his job with St. Jude. *Id*. at ¶ 10.  Collier's region covered Michigan, Illinois, Wisconsin, Minnesota, South Dakota, North Dakota and part of Indiana.  (Ex. 11, Collier Dep., p. 10).  Campbell did not know Collier's location at the time of the call. *Id*. at ¶ 11.

In her deposition, Dahl testified that she never met Plaintiff in person.  (Ex. 9, Dahl Dep. 18).  The March 5, 2015 call was conducted through the company's WebEx phone conferencing system. *Id*. at 103.  Dahl dialed in from Austin, Texas. *Id*. at 105.  Dahl did not ask Collier where he called from and she had no personal knowledge of where he called from.  *Id*. at 106. Dahl admitted that Plaintiff could disclose the substance of the conversation to the EEOC.  *Id*. at 113-14.  Dahl also admitted Plaintiff could also legally disclose it as part of a lawsuit.  *Id*.  Dahl admitted

that Plaintiff could discuss the conversation with other people at St. Jude, without violating the company's policy. *Id.*

Campbell testified in deposition that she recorded the conversation because she believed she had to protect herself after an incident with Dr. Radden, who sexually harassed her, and because she had been placed on a PIP after reporting the incident. (Ex. 10, Campbell Dep. 32, 35, 75). While Plaintiff received Defendant's policy prohibiting recordings, she was not actually of the policy until well after she recorded the conversation. *Id.* at 35. Similarly, Collier testified that even as of September 2015, when Plaintiff was terminated, he was not aware of a company policy against recording conversations. (Ex. 11, Collier Dep. 413).

Dahl acknowledged that she never knew where Collier was at any given time, unless he disclosed his location to her. (Ex. 9, Dahl Dep. 20). This was consistent with Campbell's testimony, as well as the testimony of area vice president Jason Oefinger, who similarly testified that he did not know at any given time where Collier might be (Ex.12, Oefinger Dep. 60-61). In his deposition, Collier refused to provide his home address, or to even identify the city and state where he lives. (Ex. 11, Collier Dep. 8-9).

### III – STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(c), a grant of judgment on the pleadings is appropriate "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir.2002). The Court must view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir.2004).

Under Fed. R. Civ. P. 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if its resolution will affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In making these determinations, the Court draws all reasonable inferences from the evidence in favor of the nonmoving party. *Id*. at 255.

## IV – ARGUMENT

A. **THE COURT SHOULD DISMISS THE COUNTERCLAIM UNDER THE ILLINOIS EAVESDROPPING STATUTE BECAUSE APPLICATION OF ILLINOIS LAW WOULD VIOLATE DUE PROCESS AND CONTROLLING CONFLICT OF LAWS RULES**

Unlike Illinois, Minnesota does not impose civil or criminal liability for "eavesdropping" where a phone conversation is recorded by a party to the conversation. Thus, unlike Illinois, Minnesota does not recognize a cause of action applicable against Plaintiff in this case. The extra-territorial application of the Illinois statute to impose liability in this case would be unconstitutional and would violate controlling conflict of laws rules under Minnesota law. The court should hold that Minnesota law applies and dismiss the counterclaim because it arises under Illinois law.

Dismissal on this ground is appropriate under Fed. R. Civ. P. 12(c) because Plaintiff cannot be liable for eavesdropping where Illinois law does not apply, and therefore Plaintiff is entitled to judgment as a matter of law. Dismissal is also appropriate under Fed. R. Civ. P. 56 because there are no genuine factual disputes concerning the facts giving rise to the counterclaim, and the purely legal question of whether Minnesota or Illinois law should apply is outcome-determinative. For the following reasons, Minnesota applies to this action, and Plaintiff cannot be held liable for eavesdropping as a matter of law.

**1.** **ILLINOIS LAW CANNOT BE CONSTITUTIONALLY APPLIED BECAUSE THE CHOICE OF ILLINOIS LAW WOULD BE ARBITRARY AND FUNDAMENTALLY UNFAIR**

"[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Jepson v. General Cas. Co. of Wisconsin*, 513 N.W.2d 467, 470(Minn. 1984) (quoting *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 312-13 (1981)).

In this case, the connection between the parties and Illinois is so attenuated that Illinois law cannot be applied in a constitutionally permissible manner. Plaintiff had only one alleged contact with Illinois. St. Jude, the counter-plaintiff, is a Minnesota corporation. It employed Plaintiff in Michigan. The employment agreement between the parties selected Minnesota as the forum and includes a choice of law provision requiring application of Minnesota law. Plaintiff participated in the March 5, 2015 telephone conference through a central number. She did not purposefully call or "reach into" Illinois for the call. Dahl, who organized the call, called from Texas. Defendant alleges Collier was in Illinois during the call, but Collier himself refused to disclose his address or city of residence in his deposition. Thus, the only possible Illinois contact is Defendant's mere allegation that Collier was in Illinois during the call. This contact is insufficient for choice of law purposes, however, because it is undisputed that neither Dahl nor Campbell knew where Collier was during the conversation. See Ex. 7, Campbell Declaration, ¶ 11; Ex. 9, Dahl Dep. 20. Defendant is precluded from asserting that Collier's alleged residence in Illinois provides a sufficient "contact," because Collier refused to provide his address in his deposition, and Plaintiff was not able to meaningfully depose him regarding his alleged place of residence. (Ex. 11, Collier Dep. 8-9).

Illinois has only an insignificant contact with the parties (St. Jude and Campbell) and the occurrence (the March 5, 2015 call) and application of Illinois law is therefore unconstitutional. *See Allstate Ins. Co.*, 449 U.S. at 310-311.

### 2. CONTROLLING CONFLICT OF LAWS PRINCIPLES

"In deciding conflict of law questions, a federal district court sitting in Minnesota applies Minnesota's conflict of law rules." *Matson Logistics, LLC v. Smiens*, No. 12-400, 2012 U.S. Dist. LEXIS U.S. 77454 (D. Minn. June 5, 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941)). "[G]eneral choice of law provisions, as expressed in contracts, incorporate only substantive law, and do not displace the procedural law of the forum state." *Id.* (quoting *Fredin v. Sharp*, 176 F.R.D. 304, 308 (D. Minn. 1997)). "Minnesota courts apply Minnesota law concerning procedure." *Id.* (quoting *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595-96 (8th Cir. 2007)).

### 3. THE SUBSTANTIVE LAWS OF ILLINOIS AND MINNESOTA ARE IN DIRECT CONFLICT WITH REGARD TO PLAINTIFF'S ALLEGED TORT LIABILITY FOR "EAVESDROPPING."

"Under Minnesota's choice of law analysis for substantive law, courts first look to whether there is an actual conflict between the law of two states." *Matson Logistics, LLC*, *supra* at *3 (citation omitted). Here, the substantive laws of Minnesota and Illinois are in direct conflict because the same forms of "eavesdropping" are legal in Minnesota, but illegal in Illinois. Thus, if Minnesota law applies, then Plaintiff cannot be held liable for eavesdropping, as a matter of law.

#### a. ILLINOIS LAW

In 2014, the Illinois Supreme Court invalidated the Illinois eavesdropping statute, 720 ILCS 5/14 *et seq.*, because it violated substantive due process and free speech. *People v. Clark*, 2014 IL 115776 (2014). Later in 2014, Illinois enacted a revised version of the act. Ex. 13, Ed

The act provides all-party consent is required to record conversations in which a party has a "reasonable expectation" of privacy. 720 ILCS 5/14-1(d)(defining "private conversation"); *see also*, 720 ILCS 5/14-2(a)(describing elements of an eavesdropping offense). The legal question of whether Campbell's conduct in Michigan violated those provisions of the act is a question of Illinois law, which is in flux. One Illinois practitioner is on record opining the new statute is "well intentioned but a legislative mess that is likely to cause as many problems as it solves." Ex. 13, Finkell, *supra* at 2. The new Illinois statute is "clear as mud." *Id*. It is a "short law with a ton of exceptions[,]" where "the exceptions swallow the rule." *Id*. "The problematic elements start with the definitions of 'surreptitious' and 'reasonable expectation' of privacy," such that it will be difficult to prove a defendant was being "surreptitious." *Id*.

Application of the Illinois eavesdropping act involves novel and complex questions of Illinois law. This Court should therefore hold that there is a conflict between Minnesota law and Illinois law.

### b. MINNESOTA LAW

Unlike Illinois, Minnesota and thirty-eight other states permit a party to record a phone conversation upon the consent of only one party to the conversation, including the recording-party themselves. Carol M. Bast, <u>Conflict of Law and Surreptitious Taping of Telephone Conversations</u>, 54 N.Y.L. Sch. L. Rev. 147, 150 (2009/2010)(Attached as Exhibit 14). The Minnesota statute provides that a party to a recorded conversation is exempted from liability, unless the communication is intercepted for the purpose of committing any criminal or tortious act. Minn.Stat. § 626A.02, subd. 2(d). By contrast, Illinois is one of only ten states that permit a party

to record a phone conversation "only upon consent of all parties to the conversation." *Id.*[1]

4. **DECISIONS IN SIMILAR EAVESDROPPING CASES DEMONSTRATE THAT THE FORUM STATE, MINNESOTA, SHOULD NOT APPLY ILLINOIS LAW TO PERMIT DEFENDANT'S COUNTERCLAIM WHERE THE LAW OF THE FORUM CONFLICTS WITH THE NON-FORUM LAW ON WHICH THE CLAIM IS BASED**

In analogous cases, courts have declined to apply non-forum law where the state in which the alleged illegal conduct occurred has more permissive eavesdropping laws. For example, Pennsylvania, like Illinois, is an all-party consent state. Bast, *supra* at 150. But "[in] civil wiretapping cases, the Pennsylvania Courts have consistently considered the conflicts of law problems implicated if the state in which the alleged illegal conduct occurred (i.e., where the illegal interception took place or unlawful recording was made) has more permissive laws." *See Brodak v. McClain*, Case No. 06-146 (W.D. Pa. Dec. 1, 2006)(report and recommendation)(citing *Larrison v. Larrison*, 750 A.2d 895, 898 (Pa. Super. 2000)("While this Commonwealth has an interest in protecting its citizens from having telephone conversations recorded without proper consent, we, as the courts of this Commonwealth, have no power to control the activities that occur within a sister state.")(*Brodak* R&R, attached as Exhibit 15).[2] Likewise, here, Minnesota has no power or interest to control activities occurring in Michigan, implicating only Illinois law. The Court should therefore hold that Minnesota law applies, and dismiss St. Jude's counterclaim.

5. **APPLICATION OF *MILKOVICH* FACTORS FOR CHOICE OF LAW ANALYSIS**

"The next step in Minnesota's choice of law analysis is the application of the following five factors: (1) predictability of result; (2) maintenance of interstate order; (3) simplification of the

---

[1] Michigan, the state in which Plaintiff placed and recorded the call at issue, is a one-party consent state. Bast, *supra* at 150 n. 15.

[2] The Western District of Pennsylvania adopted the Report and Recommendation on January 30, 2007. The order adopting the R&R is attached as Exhibit 16.

judicial task; (4) advancement of the forum's governmental interests; and (5) the better rule of law." *Matson*, *supra* at *7-8 (citing *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (Minn. 1973)).

The first *Milkovich* factor, predictability of result, "aims for the ideal that 'litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping.'" *Matson*, *supra* at *8 (quoting *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co*., 604 N.W.2d 91, 94 (Minn. 2000)). "Predictability is enhanced where the parties get the 'benefit of their bargain' regarding choice of law. *Id*. (quoting *Medtronic, Inc. v. Advanced Bionics Corp*., 630 N.W.2d 438, 454 (Minn. Ct. App. 2001)). "The intent of this factor is to safeguard the 'justified expectations of the parties to the transaction.'" *Id*. (citation omitted).

In this case, the predictability of result factor weighs against extra-territorial application of the Illinois statute to impose tort liability, and thus favors dismissal of the counterclaim. The facts of this case, where Plaintiff recorded a phone call involving parties in Michigan and Illinois, would result in different decisions depending on whether the court applied Minnesota or Michigan law, as opposed to Illinois law. Moreover, to the extent Plaintiff agreed to the terms of the employment agreement with Defendant, she would be deprived of the benefit of its choice of law provision, Section 10(G), were Defendant permitted to reach outside of Minnesota law to assert a claim under the Illinois eavesdropping statute. (Ex. 17, Employment Agreement). Both parties therefore have a "justified expectation" that Minnesota law, not Illinois law, will govern any disputes between them. *See Matson*, *supra* at * 8.

With regard to the maintenance of interstate order, "[t]he primary consideration under this factor is whether the application of Minnesota law would "manifest disrespect" for Illinois' sovereignty or stymie interstate commerce. *Matson*, *supra* at *9 (citing *Jepson v. Gen. Cas. Co.*

*of Wis.*, 513 N.W.2d 467, 471 (Minn. 1994)).  This factor has no obvious application here.

The next factor, simplification of the judicial task, "always favors the forum state, but Minnesota courts are presumed to be "fully capable of applying the law of another state." *Matson*, *supra* at *9 (citing *Medtronic*, 630 N.W.2d at 455).  In this case, however, the proposed counterclaim presents novel and complex issues of Illinois law, which weigh in favor of allowing the Illinois courts to interpret the revised version of that state's eavesdropping statute.  *See* Argument Sec. III.A., *supra*.

"The fourth *Milkovich* factor analyzes whether a Minnesota forum court is being 'called upon to apply rules of law inconsistent with Minnesota's concept of fairness and equity.'" *Matson*, *supra* at *9(quoting *Medtronic*, 630 N.W.2d at 455).  In this case, Minnesota's concept of fairness and equity is embodied in its own eavesdropping statute, Minn.Stat. § 626A.02, subd. 1 (1992), which does not impose tort liability in circumstances such as this case, where one party consented to the recording.  In fact, thirty-nine states, including Minnesota, do not recognize the alleged conduct as a tort.  Bast, *supra* at 178-9.  St. Jude's attempt to impose liability on Campbell under the Illinois statute is a "gotcha" tactic that is inconsistent with Minnesota's concept of fairness and equity, as embodied in its statute. *See* Bast, *supra* at 181 (describing "gotcha" situations arising out of interstate application of all-party consent rules to parties from one-party consent states).  In this case, after filing the counterclaim, Defendant did nothing in discovery to substantiate or develop its case.  These facts suggest that Defendant filed its counterclaim merely to harass Plaintiff after she filed this lawsuit.  Application of the Illinois statute to impose tort liability on Plaintiff would be inconsistent with Minnesota's concept of fairness and equity, as embodied in the state's substantive law.  The Court should therefore dismiss the counterclaim brought under Illinois law.

"Courts rarely apply the fifth *Milkovich* factor of determining which state has the better law." *Matson*, *supra* at *10 (citing *Nodak Mut. Ins. Co.*, 604 N.W.2d at 96 (stating that Minnesota courts have "not placed any emphasis on this factor in nearly 20 years"). "Courts apply this final factor 'only when the choice-of-law question remains unresolved after the other factors are considered.'" *Id.* (quoting *Medtronic*, 630 N.W.2d at 455-56). In this case, the choice-of-law question can be resolved with reference to the other *Milkovich* factors. To the extent the court applies the fifth factor, the "better law" is established by the fact that thirty-nine states, including Minnesota and Michigan, would not consider Campbell's alleged conduct to be tortious. Bast, *supra* at 179-80.

Defendant's counterclaim arises under an Illinois statute in direct conflict with the substantive law of Minnesota, the forum state. Under controlling conflict of law principles, Minnesota law applies to this action. Under Minnesota law, there is no basis for a liability judgment against Plaintiff for the alleged conduct. The Court should therefore dismiss the counterclaim.

**B.      IN THE ALTERNATIVE, THE COURT SHOULD DISMISS DEFENDANT'S COUNTERCLAIM BECAUSE THERE IS NO SET OF FACTS UNDER WHICH DEFENDANT CAN SUSTAIN ITS BURDEN OF PROVING ACTUAL DAMAGES, AND DEFENDANT CANNOT RECOVER PUNITIVE DAMAGES WITHOUT PROOF OF ACTUAL DAMAGES**

The Court should grant summary judgment as to Defendant's counterclaim because there is no set of facts under which Defendant can sustain its burden of proving actual damages, and actual damages are required for Defendant to seek punitive damages.

Section 14-6 of the Illinois statute, 720 ILCS 5/14-6, provides that a party "upon which eavesdropping is practiced" can obtain an injunction prohibiting further eavesdropping as well as actual and punitive damages. 720 ILC 5/14-6(a)-(c). The statute does not provide for liquidated

damages, and thus the party asserting the claim must prove actual damages. *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 961 (7th Cir. 1982). With regard punitive damages, [t]he law in Illinois apparently is that no punitive damages may be awarded in the absence of actual damages." *By-Prod Corp.*, 668 F.2d at 961 (construing the Illinois eavesdropping statute).

In *By-Prod Corp.*, the individual co-defendant, Schiff, secretly tape recorded a conversation he had with Arens, an employee of the corporate defendant, Armen-Berry. *By-Prod Corp.*, 668 F.2d at 958. Schiff allegedly erased the recording, and therefore it was not produced in discovery. *Id.* After learning of the recording in discovery, Armen-Berry filed counterclaims against Schiff and By-Prod Corp. alleging violations of both federal and Illinois eavesdropping statutes. *Id.* at 958-59.

The Seventh Circuit affirmed the district court's decision granting summary judgment to Schiff and By-Prod and declining to exercise jurisdiction over the eavesdropping counterclaim under Illinois law. *By-Prod Corp.*, 668 F.2d at 961. Specifically, the Seventh Circuit held there was no basis for actual damages to Armen-Berry stemming from the alleged eavesdropping, and in the absence of actual damages, Illinois law precluded the defendant from obtaining punitive damages. *Id.* The Seventh Circuit held it was "clear beyond any reasonable doubt that Armen-Berry could not obtain any actual damages" because there was a "lack of any possible injury to Armen-Berry from the allegedly illegal interception." *Id.* The Court further noted that the only discernible purpose behind Armen-Berry's eavesdropping counterclaim was "not to get damages but to make the jury in the underlying antitrust action think that the plaintiff was guilty of a Watergate-style tape erasure." *Id.* at 961.

In this case, as in *By-Prod Corp.*, there is a complete lack of any possible injury to the corporate Defendant, St. Jude, from the allegedly illegal recording of a conversation by Campbell.

Plaintiff has not disclosed the recording to anyone outside of her counsel and defense counsel as part of discovery in this case. Dahl admitted she is not aware of any harm suffered by St. Jude as a result of the recording. (Ex. 9, Dahl Dep. 117). Defendant has not pleaded a basis for actual damages. It has not identified any witnesses with discoverable information regarding the counterclaim. In response to interrogatories, Defendant has stated only its "suspicion" that it might have suffered reputational harm or lost customers, but has not conducted any discovery or produced any facts at all to support its claim. Based on these deficient pleadings and proofs, the Court should dismiss the counterclaim.

C.  **ST. JUDE CANNOT RECOVER ACTUAL DAMAGES FOR THE ADDITIONAL REASON THAT ITS PLEADINGS DO NOT SUPPORT A CLAIM FOR ACTUAL DAMAGES, AND IT HAS REFUSED TO PROVIDE ANY EVIDENCE OF DAMAGES IN DISCOVERY**

St. Jude cannot recover actual damages for the additional reason that its pleadings do not support a claim for actual damages, and it has refused to provide any evidence of damages in discovery. St. Jude's counterclaim does not adequately plead how it suffered damages as a result of the alleged violation of Illinois law. Defendant's counterclaim contains only the following cursory allegation reciting the types of damages generally available under the statute:

> 14.  As a result of Campbell violating the Act, St. Jude is entitled to all available statutory and common law remedies, including, but not limited to: an injunction prohibiting further violations of the Act; St. Jude's actual damages; and punitive damages.

Docket No. 55, Amended Answer and Counterclaim, Counterclaim ¶ 14.

St. Jude never provided the required Rule 26 disclosures as to the counterclaim identifying damages or witnesses to support the counterclaim. In discovery, Plaintiff served Defendant with the following interrogatory regarding its damages:

> **INTERROGATORY NO. 2:** With regard to your claim for actual damages

as set forth in paragraph 14 of the counterclaim, please provide all complete description of each category of damages alleged, the factual basis for each category of damages alleged, the specific amount of damages claimed and basis for same, and produce all documents in support of your claim for damages.

Ex. 3, First Interrogatories as to Counterclaim.

On January 10, 2018, in its initial response to this interrogatory, St. Jude answered:

…SJM states that it has not yet determined the extent of damages it might have suffered as a result of Campbell's unlawful behavior. Nonetheless, SJM suspects it may have suffered harm to its reputation, as well as potentially lost customers. Discovery is ongoing and SJ will timely supplement its Answer upon learning additional information. Nonetheless, SJM states that it is also entitled to an injunction prohibiting Campbell from surreptitiously recording future conversations, as well as to punitive damages.

Ex. 4, St. Jude's Answers to Counter-Defendant's First Set of Interrogatories, 1/10/18, p. 4-5.

On March 27, 2018, in a supplemental response to this interrogatory concerning damages, St. Jude copied and pasted an identical response, with a promise to timely supplement "upon learning additional information." Ex. 5, St. Jude's Supplemental Answers to Counter-Defendant's First Set of Interrogatories, 3/27/18, p. 4-5.

Defendant provided the foregoing supplemental answer on March 27, 2018. Discovery closed on April 30, 2018. (Docket No. 63, Second Amended Pretrial Scheduling Order). Defendant never supplemented its answer with any details or information regarding its claim for damages. There is no evidence of any actual damages to St. Jude, whether in the form of reputational damage, lost customers, or otherwise. In fact, it does not appear St. Jude has made any effort to obtain or present such evidence. The Court should grant summary judgment to Plaintiff and dismiss St. Jude's counterclaim based on this failure of proof.

The court should dismiss the counterclaim for the additional reason that St. Jude has failed to comply with its discovery obligations as to the counterclaim. Fed. R. Civ. P. 26(e)(1)(A)

requires that a party "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e) requires that supplementation be made in a "timely manner." Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial."

A "party may not free itself of the burden to fully comply" with the obligation to supplement discovery by placing "a heretofore unrecognized duty of repeated requests for information on its adversary." *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) (discussing duty to supplement under Rule 26(e)). The duty to supplement applies whether the corrective information is learned by the client or the attorney and extends not only to newly discovered evidence but also to information that was not originally provided even though it was available at the time of the initial disclosure or response. *Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*, 2009 WL 1617773, at *5 (E.D.N.Y. June 9, 2009). In addition, the duty to supplement continues even after the discovery period has closed. *See, e.g., McKinney v. Connecticut*, 2011 WL 166199, at *2 (D. Conn. Jan. 19, 2011) (noting that the "fact that discovery has closed has no bearing on [the d]efendant's duty to supplement under Rule 26(e)"). Thus, if Defendant presents new evidence at summary judgment, it should be excluded because the proponent had a duty to supplement its discovery responses and its failure to supplement resulted in prejudice. *See, e.g., Net 2 Press, Inc. v. 58 Dix Ave. Corp.*, 266 F. Supp. 2d 146, 161 (D. Me. 2003) ("While supplementation of interrogatory answers may be allowed under some circumstances, it should not be allowed after the filing of dispositive motions and on the eve of

trial." "It makes no sense . . . to allow the plaintiff to avoid summary judgment by placing the necessary information in an affidavit submitted in opposition to the defendants' motion for summary judgment.").

In determining whether the automatic exclusion provision of Rule 37 should apply, the Court should consider four factors in assessing whether the failure to disclose was substantially justified or harmless: (1) the importance of the excluded material; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the material to be used at trial or on a motion; and (4) the availability of a continuance to cure such prejudice. *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F. Supp.2d 1045, 1064 (D. Minn. 1999).

In this case, all four factors establish that St. Jude's failure to disclose any details or proofs regarding its damages claim is neither justified nor harmless. First, the information is unquestionably important. Under Illinois law, Defendant is precluded from obtaining punitive damages without proof of actual damages. *By-Prod Corp*., 668 F.2d at 961 (citing *Florsheim v. Travelers Indemnity Co. of Illinois*, 75 Ill.App.3d 298, 309-10,393 N.E.2d 1223, 1233 (1979)). Defendant's failure to muster any proof of actual damages is therefore fatal to its counterclaim. Furthermore, as discussed below, Defendant's failure to provide discovery related to the counterclaim demonstrates that it cannot sustain its burden of proof that Campbell "knowingly and intentionally" committed the elements of the cause of action.

Second, St. Jude has not yet explained its failure to comply with its duty to supplement. But the Court should be wary of such excuses at this stage of the case, since "it makes no sense . . . to allow the [defendant] to avoid summary judgment by placing the necessary information in an affidavit submitted in opposition to the defendants' motion for summary judgment." *Net 2 Press,*

*Inc.*, 266 F. Supp. 2d at 161. In other words, it is too late for Defendant to submit new evidence, through affidavits or otherwise, to support the counterclaim.

Third, because St. Jude never disclosed its facts, witnesses or proofs with respect to damages, Campbell was not able to complete additional discovery regarding the damages claimed by St. Jude. Discovery is now closed. Campbell would be severely prejudiced if St. Jude were permitted to rely upon proofs or allegations of damages that it failed to disclose in discovery.

Fourth, a continuance is not available under the circumstances because the parties have already filed notices of filing dispositive motions, and the defendant's failure to provide requested discovery, despite an opportunity to do so, does not constitute good cause for amending the scheduling order. Docket No. 63, Second Amended Pretrial Scheduling Order, p. 1.

Defendant has failed to muster any support for its damages claim in discovery. Defendant has not pleaded any facts supporting its alleged damages, nor has it supplemented its discovery responses or initial disclosures to provide any factual basis for its damages claim. The Court should exclude any newly proffered evidence or allegations pursuant to Fed. R. Civ. P. 37 and should grant summary judgment to Plaintiff as to Defendant's counterclaim.

**D. DEFENDANT IS NOT ENTITLED TO PUNITIVE DAMAGES AS A MATTER OF LAW**

"[P]unitive damages may be awarded in Illinois only in cases either where malice, violence, oppression or wanton recklessness, mingle in the controversy, or where the act complained of partakes of a criminal or wanton nature. *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d at 962 (quotations and citations omitted). "If no circumstances of aggravation be shown, and no evil motive be imputed, then vindictive damages should not be given." *Id.*

In this case, Defendant has not pleaded any of the aggravating circumstances required to state a claim for punitive damages. In addition, even if the Court were to look beyond the

pleadings, there is no evidence of aggravation or evil intent required to obtain punitive damages based on Campbell's recording of her conversation with Dahl and Collier. In *By-Prod Corp.*, the Seventh Circuit held that the individual co-defendant, Schiff, could not be liable for punitive damages as a matter of law because he had a lawful purpose in recording the conversation, which was to make sure he had an accurate record of what was discussed. *By-Prod Corp.*, 668 F.2d at 959. Campbell had a similar purpose—she recorded the conversation because she felt she needed to protect herself after Dr. Radden's sexual harassment and the retaliation she experienced after reporting it. (Ex. 10, Campbell Dep. 32-35). Dahl admitted that Plaintiff could disclose the substance of the conversation to the EEOC. (Ex. 9, Dahl Dep. 113-14). Dahl also admitted Plaintiff could also legally disclose it as part of a lawsuit. *Id*. Dahl admitted that company policy did not prohibit Plaintiff from discussing the content of the conversation with other people within the company. *Id*. Similar to *By-Prod.*, Campbell recorded the conversation to preserve an accurate record of a conversation that she believed, in good faith, affected her legal rights.

As in *By-Prod Corp.*, because Campbell had a good-faith and lawful purpose in recording the call, St. Jude cannot prove her purpose was malicious, violent, oppressive, wanton, or of such a criminal nature that punitive damages should be awarded, particularly in the absence of actual damages. The Court should therefore grant summary judgment to Plaintiff with respect to the counterclaim.

E.  **IN THE ALTERNATIVE, EVEN IF ILLINOIS LAW APPLIES, THE COURT SHOULD DISMISS DEFENDANT'S COUNTERCLAIM BECAUSE THE UNDISPUTED FACTS SHOW PLAINTIFF DID NOT ENGAGE IN PROHIBITED "EAVESDROPPING" IN VIOLATION OF THE ILLINOIS STATUTE**

As a matter of law, Defendant will not sustain its burden of proving that Campbell violated the Illinois act when she recorded her conversation with Collier and Dahl. Specifically, Defendant

cannot prove Campbell acted "knowingly and intentionally" as to all elements of the counterclaim. The Illinois Eavesdropping Act, 720 ILCS5/14-2 provides that "[a] person commits eavesdropping when he or she knowingly and intentionally…[u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation." 720 ILCS 5/14-2(a)(2).

With regard to the mental state required to prove the counterclaim, Illinois law provides "[a] person is not guilty of an offense…unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in [ILCS 5/4-4 through 4-7]." 720 ILCS 5/4-3(a). Illinois law defines "intentionally" as follows:

> A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct.

720 ILCS 5/4-4.

Illinois law defines "knowingly" as follows:

> A person knows, or acts knowingly or with knowledge of:

> (a) The nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.

> (b) The result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct.

> Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the term "willfully", unless the statute clearly requires another meaning.

> When the law provides that acting knowingly suffices to establish an

element of an offense, that element also is established if a person acts intentionally.

720 ILCS 5/4-5.

The statute defines "surreptitious" to mean "obtained or made by stealth or deception, or executed through secrecy or concealment." 720 ILCS 5/14-2(g). Here there is no evidence that Campbell acted knowingly and intentionally with stealth, deception, secrecy or concealment, as required under the statute. Campbell testified she was not aware of company policy against recording at the time of the call. (Ex. 10, Campbell Dep. 35). Collier testified that even as of September 2015, when Plaintiff was terminated, he was not aware of a company policy against recording conversations. (Ex. 11, Collier Dep. 413).

The Illinois statute defines "private conversation" as follows:

> For the purposes of this Article, "private conversation" means any oral communication between 2 or more persons, whether in person or transmitted between the parties by wire or other means, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation. A reasonable expectation shall include any expectation recognized by law, including, but not limited to, an expectation derived from a privilege, immunity, or right established by common law, Supreme Court rule, or the Illinois or United States Constitution.

720 ILCS 5/14-1(c).

Here, the conference call was initiated from Texas by Dahl, using a central call-in number. Neither Campbell nor Dahl knew where Collier was located at the time of the conference call. In fact, both Dahl and Oefinger, who worked with Collier regularly, testified in deposition they never knew where he was located at any given time. The fact that Collier himself refused to provide his home address during his deposition supports the conclusion that Campbell did not knowingly and intentionally record a private conversation, as defined under Illinois law. There is no evidence of an objectively reasonable expectation of privacy to support St. Jude's counterclaim. Dahl admitted

Plaintiff could disclose the substance of the conversation to the EEOC. (Ex. 9, Dahl Dep. 113-14). Dahl also admitted Plaintiff could also legally disclose it as part of a lawsuit. *Id*. Nor was there anything restricting her from discussing the content of the conversation with other people within the company. *Id*. Plaintiff did not receive St. Jude's recording policy until after she recorded the call. (Ex. 10, Campbell Dep. 35). Collier admitted in his deposition that he did not know the company policy at the time of the call. (Ex. 11, Collier Dep. 413).

Furthermore, St. Jude has not identified anyone through disclosures or other discovery that had discoverable information in support of the counterclaim, including anyone to testify that Collier was in Illinois at the time of the call. In addition, Collier should be precluded from providing any evidence on that issue given his refusal to provide his address or city that he lives in at his deposition. Both Campbell and Dahl testified that they had no idea where Collier was. Defendant cannot establish he was in Illinois during the call, and thus cannot establish Campbell is liable for "eavesdropping" under the Illinois statute.

St. Jude's counterclaim should be dismissed because Campbell was in Michigan during the conversation at issue, and St. Jude cannot satisfy its burden of proving she knowingly and intentionally recorded any private conversation, within the meaning of the statute. As a matter of law, therefore, Defendant cannot sustain its burden of proving that Campbell violated the Illinois act when she recorded her conversation with Collier and Dahl.

### V – CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, the Court should enter judgment of dismissal on the pleadings as to St. Jude's counterclaim because Minnesota law applies, and the counterclaim is based only on the conflicting law of Illinois. In the alternative, even if Illinois law applies, the Court should grant summary judgment in favor of Plaintiff as to St. Jude's counterclaim because there is no

proof of actual damages, Defendant has not fulfilled its obligations in discovery to provide a basis

for actual or punitive damages, and Plaintiff is not liable for eavesdropping, as a matter of law.

Respectfully submitted,

FAGAN MCMANUS, P.C.

_/s/ Barry S. Fagan_ (MI Bar No. P34275)
Fagan McManus, P.C.
Barry S. Fagan (MI - P34275)
Jennifer Lossia McManus (MI - P65976)
25892 Woodward Avenue
Royal Oak, MI 48067-0190
Tel:  248-542-6300
Fax: 248-542-6301
Email: bfagan@faganlawpc.com
Email: jmcmanus@faganlawpc.com
LEAD ATTORNEYS
PRO HAC VICE

Date:  May 31, 2018